LLOYD S. R. KIDDER AND ELLA M. KIDDER, HUSBAND AND WIFE, PLAINTIFFS AND RESPONDENTS, *v.* HERSCHEL G. HARDING AND BEATRICE L. HARDING, HUSBAND AND WIFE, DEFENDANTS AND APPELLANTS.

No. 14038.
Submitted April 25, 1978.
Decided June 28, 1978.
Rehearing Denied Sept. 6, 1978.
582 P.2d 747.

Robert S. Keller (argued), Kalispell, for defendant and appellants.

Fennessy, Crocker & Harman, Libby, David W. Harman (argued), Libby, for plaintiffs and respondents.

MR. CHIEF JUSTICE HASWELL delivered the opinion of the Court.

Defendants appeal from a judgment of the District Court, finding that they were unjustly enriched by plaintiffs' services and ordering them to make restitution to plaintiffs.

Defendants Herschel and Beatrice Harding were the owners of a 270 acre ranch located in the Yaak area of Lincoln County, Montana. In March 1975, Herschel Harding telephoned the plaintiffs, Lloyd S. R. "Buck" Kidder and his wife, Ella, who were longtime friends of defendants, to see if they would like to come live on their property. In the following weeks Buck and his family met twice with defendant at defendants' ranch to discuss the matter. The content of their conversations and resulting agreement is in dispute. Buck Kidder claims that in his phone call with Herschel, Herschel asked Buck if he would lease defendants' farm property and live on it. Buck alleged that their following conversations resulted in an agreement in which the Hardings would lease their ranch to the Kidders for 20 years and would deed them 20 acres of land from a portion of the property on which the Kidders could build a house. Buck was to have complete control of all farming activities, complete use of all farm equipment, retain all income from the haying operation, and raise as many cattle as he wished. In return he was to raise a certain amount of cattle for the Hardings, pay the taxes on the property, pay the Hardings' utilities when they were not there, and generally to keep the place in order.

Herschel Harding claims that when he phoned Buck, he only asked him if he would move onto his place and take care of it. Both he

and his wife were elderly and no longer interested in farming the property. They had children living elsewhere whom they wished to visit occasionally, and only wanted a caretaker to watch their place while they were gone. Herschel alleged that Buck said he would come if Herschel would lease the property to him for 20 years, but that Herschel refused to do so because he was then 70 years old and probably would not be living at the end of the lease. Buck then asked Herschel for a piece of land on which to build a house, but Herschel said he would give him land only if everything turned out satisfactorily. Herschel initially contemplated that Buck could keep his job with the Forest Service, but transfer working stations from Troy to Sylvanite, Montana, so he could commute from the ranch. Buck, however, wanted to work the property if he moved. Consequently, Herschel agreed to let Buck have the hay from his haying operation and Herschel's cattle, providing Buck raised a certain number of cattle for him.

Buck quit his job with the Forest Service and in early June, 1975, he and one of his sons moved from Troy to the Hardings' ranch. His wife Ella continued to work for the Forest Service until she moved to the ranch in August. As part of their agreement Hardings provided the Kidders with a trailer in which to live.

While on the ranch Buck repaired the Hardings' old farm equipment, repaired broken fences, put up electric fences to keep the cattle in, made temporary repairs to part of the barn roof, cut rails and posts for new fencing, and cut and baled hay. With the help of Louis Nelson and George Powers, he cut timber from a portion of the ranch to clear the area for a highland pasture. From the proceeds obtained from selling the timber, Buck paid Nelson and Powers about $800 each and kept the remaining $800 himself. In addition he cut and baled hay at the neighboring Creesey place and later sold his share of the hay for $700. He also received $750 from a contract with the Forest Service to mow weeds along the highway. After deducting his expenses, Buck gave half the proceeds from this contract, $340, to the Hardings. In October, 1975, a dispute arose between the Kidders and the Hardings over the use of

some equipment, after which the Kidders left the Hardings' ranch. The Kidders claim that Herschel told them to leave; the Hardings claim the Kidders left of their own choice.

On November 20, 1975, the plaintiffs filed suit in District Court, Lincoln County, alleging that defendants leased their property to plaintiffs for 20 years and agreed to deed plaintiffs 20 acres of their land; that plaintiffs were to conduct farm and ranch operations on defendants' land, to raise cattle, and to pay taxes and utilities for defendants in consideration for the lease and deed; that Buck Kidder quit his job with the Forest Service in reliance upon defendants' promises and consequently lost wages and his permanent position with the Forest Service; and that plaintiffs worked defendants' land and made various expenditures in connection with their work. Plaintiffs sought specific performance of the agreement to lease defendants' ranch and to deed 20 acres of land to them and damages totaling $18,447.90. In the alternative they sought restitution of $18,447.90, resulting from their detrimental reliance upon defendants' promise and defendants' unjust enrichment.

At trial plaintiffs presented evidence showing the oral agreements to lease the defendants' ranch and to deed property to them, evidence of the amount and kind of work they did on the ranch, evidence of the expenditures they made, and evidence of the value of plaintiffs' services to defendants. After the District Court granted plaintiffs' motion to amend the pleadings to conform to the evidence presented at trial, specifically to include a theory of recovery under quantum meruit.

On June 9, 1977, the District Court entered its findings of fact, conclusions of law, and judgment. It found, among other things, that defendants had offered to lease their land to plaintiffs for 20 years; that defendants were to deed plaintiffs 20 acres of their land; that in reliance upon defendants' promises Buck Kidder quit his job with the Forest Service and plaintiffs moved to defendants' ranch; that plaintiffs performed valuable services for defendants from which defendants benefited; that Buck Kidder paid Louis Nelson $815 and paid George Powers $839.22 for their help on the log-

ging operations; that plaintiffs made expenditures of $571.71 for which they had receipts and expenditures of $300 for gasoline for which they did not have receipts; and that the reasonable value of a farmland's services in the Yaak area during summer and fall of 1975 was $400 per month, plus room and board.

The District Court made no findings as to what arrangement existed between the Kidders and the Hardings concerning the timber cutting project, the weed mowing project, and the hay cutting project at the Creesey's. At trial both Buck and Herschel agreed that the agreement to cut timber was separate from the "base" of the ranch property. Buck alleged that Herschel agreed to give him the proceeds from the sale of the timber for clearing the land; Herschel alleged that the proceeds were to be used to purchase a used "cat" to help with future work as to hay cutting at the Creesey's. Herschel told Buck that the hay was for sale and told him what percentage of the baled hay to charge for cutting the hay. As to mowing weeds for the Forest Service, no explanation was given why Buck split the proceeds with the Hardings. Buck used the Hardings equipment in both the hay cutting and weed mowing projects.

The District Court did conclude that the oral lease agreement between plaintiffs and defendants for the 20 year lease of defendants' ranch was unenforceable because of the statute of frauds, but made no conclusion concerning the agreement to deed 20 acres of defendants' land to plaintiffs. It also concluded that defendants should not be allowed to unjustly enrich themselves at plaintiffs' expense; that defendants obtained plaintiffs' services for five months; that plaintiffs' services had a reasonable value of $2,000 computed on the basis of $400 per month; that defendants were unjustly enriched through the following expenditures by plaintiffs: real estate taxes, $200; farm necessities, $195; payment to Louis Nelson, $815; payment to George Powers, $839.22; miscellaneous expenditures, $534.86; and gasoline expenses $300; and that defendants were unjustly enriched through the use of plaintiffs' chain saw at a value of $150, and through use of plaintiffs' vehicles at a

value of $350. The District Court entered judgment granting plaintiffs $5,384.08, plus interest, from November 1, 1975.

Defendants have raised five issues on appeal but because of our decision in this case we will only discuss the following two:

1. The award to plaintiffs of $5,384.08;

2. The finding that the reasonable value of Buck Kidders' services was $400 per month?

■ We will discuss the second issue first. Defendants contend plaintiffs' expert witness testified that the wage for an experienced ranch hand was $400 per month plus room and board. They argue that plaintiffs presented no evidence that Buck Kidder was an experienced ranch hand, nor did they present evidence of the value of his services as a logger. They therefore conclude that valuating Buck's services at $400 per month plus room and board was error.

The record does not support defendants' argument. Buck Kidder was inexperienced as a ranch hand. At trial plaintiffs established the value of their services to defendants through Robert Stanley, the employment service manager of the State Employment Office in Libby. Although Stanley did testify that the prevailing wage rate for an experienced ranch hand was $400 a month plus room and board, he also testified that wages for an inexperienced ranch hand varied from $300 to $400 a month, plus room and board. He also emphasized that his wage quotes varied considerably depending upon the rancher, the season, and the economic situation. We think this evidence supports the District Court's finding that the reasonable value of plaintiffs' services were $400 a month plus room and board.

Defendants' other specification of error relates to the amount of the award granted to plaintiffs. They claim that the District Court's $5,384.08 award should be offset by $3,928.75. Defendants argue this sum represents amounts plaintiffs have already received, namely: $2,400 from the sale of timber; $410 from the Forest Service Contract to mow weeds along the highway; $700 from cutting hay at the Creesey's ranch; $318.75 from 255 bales of Hardings' hay which Buck sold; and $100 representing the value of

80 bales of Hardings' hay which the Kidders took with them when they left. We agree that the defendants are entitled to offsets for various amounts, but not all that they claim. Additionally, we feel the District Court incorrectly determined other amounts which it included in its award. Consequently, we shall review the entire award made by the District Court.

At trial plaintiffs adopted a theory of quantum meruit and introduced evidence of the monthly value of their services to the defendants. This amounted to $2,000 for the five months which plaintiffs worked for defendants. In addition plaintiffs wrote checks to defendants for the following: $200 for taxes; $170 for feed and grain for the cattle; $25 for the Hardings' utilities. They presented receipts at trial for miscellaneous expenditures representing repairs on farm equipment and costs of baling time and gasoline totaling $647.86. Seventy dollars of this amount, however, Buck Kidder previously deducted from the payment he received from the Forest Service for mowing weeds and $27.96 was for a new battery which he put into his own pickup. Subtracting these items leaves an amount of $549.90 chargeable to defendants. Buck also testified he spent $300 on gasoline to run the farm equipment for which he had no receipts. During the summer plaintiffs used their chain saw for logging and cutting fence posts and rails and defendants used plaintiffs' vehicles for transportation. The District Court awarded plaintiffs $150 for use of the chain saw and $350 for use of plaintiffs' vehicles as the reasonable rental value of these items. The uncontradicted evidence does not support these findings. Buck Kidder testified that he used his chain saw for 200 to 300 hours on projects for defendants' benefit and that based on his prior experience $1.50 per hour was a reasonable rental for its use. Defendants did not object to this valuation. We therefore find that a reasonable value of this use was $300. Over defendants' objection for lack of foundation Buck Kidder also testified that a reasonable rental rate for defendants' use of his vehicles was $150 per month. Because defendants did not raise this as error on appeal we will accept that valuation. For five months use we find that defendants should be charged $750.

■· Against this total of $4,294.90 we find that offsets in the sum of $1,838.85, representing monies which plaintiffs have already received, should be deducted. Because plaintiffs adopted the quantum meruit theory on which to proceed, we feel that the income they received from timber cutting, from mowing weeds, and from cutting and baling the Creesey's hay less their expenses should be charged against the wages awarded under the quantum meruit theory. We feel supported in this approach by the fact the plaintiffs used defendants' equipment in performing these jobs or have charged defendants for the use of their equipment.

Plaintiffs received $2,400 from the timber cutting project. The District Court, which found that Buck Kidder made payments to George Powers of $839.22, and to Louis Nelson of $815 for their help cutting timber included those amounts in its award, but we find they are not supported by the evidence. Buck testified that he paid Powers about $800 for his work, although we have found no receipts or cancelled checks in the record to verify this amount. We find no evidence to support the additional $39.22 which the District Court allotted. Regarding payments to Nelson, Buck wrote four checks totaling $761.15 and testified he paid him $40 in cash. We therefore find $1,601.15 should be deducted as expenses from the $2,400. Plaintiffs received $750 from mowing weeds for the Forest Service. From this amount Buck deducted $70 as expenses and paid the Hardings $340, leaving him $340. Plaintiffs also received $700 from cutting and baling hay at the Creesey place. Thus the plaintiffs actually received $798.85 from timber cutting, $340 from mowing weeds, and $700 from cutting and baling the Creesey's hay, totaling $1,838.85, which we shall offset against their award.

Finally, we are offsetting an additional $318.75 for goods which plaintiffs received in kind. Defendants argue that a total of $418.75 should be offset representing 225 bales of Hardings' hay which plaintiffs sold and 80 bales of Hardings' hay which they took with them when they left. The hay weighed approximately 50 pounds per bale and was valued at $50 per ton. The unrefuted evi-

dence shows that the Kidders sold 175 bales of Hardings' hay, not 255 bales. The value of the 175 bales which they sold and the 80 bales which they took is $318.75.

In conclusion we hold that plaintiffs' award should be reduced to $2,137.30, plus interest at the rate of six percent per annum from November 1, 1975, until paid.

Let judgment be entered accordingly.

MR. JUSTICES DALY, HARRISON and SHEEHY concur.